The next case for argument is Malley v. San Jose Midtown Development, LLC. While the attorneys are transitioning, I just wanted to let all the parties know we plan on taking a short recess after Huntley v. Instagram. What we have here is we have alleged a large amount of evidence that reflects the fact that terminology reflecting loans is replete within the course of conduct and within the transaction here. Well, I'm not sure if the key case here that I understand under California law would be the Junkin case, correct, the 2010 opinion? That is one of the cases. Well, it's a key case, is it not, in that the California appellate court under state law has clearly said a joint venture or partnership that requires its partners to make advances is an investment and specifically said as a matter of law that it's not a loan. And I'm not really sure how you dance around that in terms of the facts of this case. Well, your honor, essentially this is a multi-part test and no one single factor is going to be conclusive. And that's going to our point, which is that this is something that the trial court should not have. This is a case that the trial court should not have interrupted during a motion to dismiss stage. This is something where a jury or a fact finder should have looked into all of the factors involved before coming up with this conclusion. Tell me what facts are critical that the district court decided that it should have been decided by a jury. Well, for one, it can't be the ultimate question, was this a loan or a joint venture, because a jury would have absolutely no basis, they'd be free skating, they'd have no idea what those terms meant and how they were to decide. So what facts are in dispute that are material that the district court decided and should not have? Well, your honor, for example, the defendants repeatedly used terms associated with loans, including interest, line of credit, borrowing members, and annual rate, which compounds daily. This is from Exhibit 7 and 8 from the Second Amendment Complaints, so that's 4ER449-451. There also is documentation, that is emails, from a key member, who later became a manager of the LLC, that is Mr. Patel, in which he stated that the LLC had amended its operating agreement, quote, to allow for a line of credit, which, quote, would allow borrowing members to fund their capital requirements from contributing members. And then he also stated in that same email from January 2017, the line of credit is secured by borrowing members' economic interest and is at a 20% annual rate, which compounds daily and can be paid down anytime by the borrowing member. And this is from 4ER438, that's Exhibit 3, to the Second Amended Complaint. And what's important, what's also significant here is that we also have the manager's accounting statement for the $11.2 million sale at issue here, and that's from 4ER449-451. And there it showed that, you know, there are many items there with interest rates ranging from 20 to 40%, comprised of items such as delinquent capital contribution interest of 20%, an environmental line of credit interest of 20%, a legal 20% bonus interest. Counsel, if we were to conclude that this was absolutely a joint venture, what term should the agreements have used in place of those terms? What terms would a joint venture have used? So your contention is all of those terms indicate that this is a loan, and those are clearly terms that are used in loans. What terms should a joint venture have used to indicate that this was a joint venture and not a loan? Well, the terms should, there should not have been mention of the word interest, there should not have been mention of the word compounding. You know, the only, I'm sorry, Judge, what word would we have used instead of interest or compounding? Aren't those sort of kind of a plain understanding? These are accounting terms, they're economic terms, they're terms in common usage so that people would understand what was going on. But if you're going to tell me that they shouldn't have used the term interest, you've got to tell me what kind of a term they should have used if it was a joint venture. If I can just follow up on Judge Biby's question, answer a compound question that that is, is that essentially the facts of this case are clear that if a member chooses not to answer the capital call, their equity was to be reduced and it could remain just being reduced because they had less equity unless they would remunerate that amount and that's where a matter of interest would come in if they chose to remunerate it in some way. They were free to just not answer the capital call and their equity would be reduced, isn't that correct? Is that not correct? Is that not the record? If they chose not to answer the capital call, their investment was just going to be, their equity would be reduced. Is that not correct? That is correct, Your Honor, but the key is whether or not they choose to accept what we vehemently consider to be a loan. Then if that happened, their equity, their equity interest would not be changed. And more importantly, the equity interest of the borrower of the lending members was not changed either. And that is through, you know, through undisputed evidence from an email from the defendants. That's that email from January 24th, 2017 that I referenced to earlier. So that reflects that this was a loan because if this had not been a loan, then there would have been an adjustment made to the equity. And the other point I wish to make is that on a motion to dismiss, all inferences must be drawn in favor of the plaintiff and in any benefit of the doubt must be given to the plaintiff at this early stage. And this is from the Usher versus Los Angeles case that was cited. So, you know, any, so here we have provided sufficient indicia, evidentiary indicia, you know, reflecting the fact that this, that this arrangement was a loan. These were three members of the LLC who accepted this arrangement and they accepted a loan and they were subject to interest rates of, whopping interest rates of 20 to 40%. This is a rather rare. Where does the operating agreement provides that the members who default on their obligations may have their equity reduced? Where does it impose an absolute obligation of repayment on those who make that decision? Where is there anything in the operating agreement that imposes that obligation upon them to try to create this as a loan? It's not in the operating agreement, but it's implicit from the economic circumstance, from the real estate deal, the $11.2 million sale and from case law showing that it's not just the agreement that matters. It's also the course of conduct. It's also the, it's also the documents generated by the transaction. That's really important because basically the California courts recognize that people that, that lenders who are trying to make usurious loans, dress it up sometimes and use subterfuge. And for that reason, the courts in this case, Warner versus Colwell and West Pico furniture, that's a state Supreme Court, California state Supreme Court. They look beyond the agreement and look at the actual transaction, how it played out the course of conduct and, and the documents generated. And we, what we have done here is we have, we have, we have provided documentary evidence showing language and documents reflecting the fact that this was a loan that everyone considered this alone, that terminology was used such that it was alone. I mean, there was an email from March, 2018, where SJ, where the LLC's manager, JC Martin noted that quote, it was quote, that the LLC was requiring Mr. Malley to pay quote, 20% interest initially increasing to 25% on March one to 30% on May one, then to then to 40% on June one. And this is from, um, for ER four 40, I realized my time is going down. I'd like to reserve time, but if your honors have questions, I just want other, I just, if I'm not wrong, the whole basis of your being in federal court was a classifying. This is a civil RICO action. You still have a state cause of action, but you were in federal court totally on the basis of trying to assert a civil RICO action, correct? That's correct. And this is basically, this entire matter involves one single commercial transaction and the sale, one sale of one piece of property. Is that correct? Ultimately it, it, it amount, it, it does, it reflects the sale of an $11.2 million property. But when it comes to, you've, you've, you've alleged some kind of pattern of conduct within the ambit of the civil RICO statute. Yes, your honor. And this is really important because when you're alleging civil, when you're alleging a use use RICO usury, you don't need to allege the same pattern of conduct. And that's under the Goldenstein versus repossessors case, as well as a couple, a number of other cases. For example, USP wrote 961 F third one Oh five pinpoint site one 19. That's when the second circuit us versus a Rado 37 F third seven 39 pinpoint site seven 51. That's from the first circuit. US versus our point nine 64 F second 1492 pinpoint site 1495 to 1497. Okay. Thank you, counsel. We'll give you a minute on rebuttal. Thank you. Go ahead. May it please the court. My name is Mark Benninghausen and I represent San Jose midtown development, which is the LLC entity. And five individual members of that LLC who were sued by Mr Malley. I think the panel has nailed in on what is wrong with any theory in this case. And in fact, as the record reflects, we thought there was was a rule 11 sanctionable pleading to begin with. I think it's important for the context here. This was a successful venture, but in the few cases I've seen where Mr Malley could have recovered $400,000 for a $77,000 investment, but he decided to sue while every other member in the in the in the entity accepted their terrific return on the money they invested and went on their way. And Mr Malley, who refused to put any more money into this venture while it was embroiled in years of litigation, always threatened to sue at the time there might be money coming for the sale of the property. And he threatened in 2019. As a record reflects, it was always state court. I'm going next party state court. In fact, when this happened in 2020, he again threatened to go in state court. And I submit the reason we're in federal court is because the pandemic hit. And then he couldn't go to state court because they closed ex parte. And the whole plan here was to try to tie up the money for all these members, not allow them to release it, and then negotiate more money than he was entitled. Now, our position is he ginned up this RICO claim to try to get the federal to get a TRO to stop the distribution, which he lost without any opposition. The plain fact here is there is no plausible RICO claim because the contract that Mr Malley signed shows exactly what happened here. This was a equity investment that people who put more money in got a preferred return until other people got until they got their money out. Then it would go to the other members who did not put in more money into the venture. If this is found to support a usury claim, I submit every deal in Silicon Valley is subject to a usury RICO action. This is how investments work. If a venture is having problems and they need more money, the new money that comes in to negotiate preferred returns on their equity, preferred equity. That's happened a lot of times. I had another case in state court. The exact same thing happened. The preferred equity received all the money from the sale of the transaction. That's the way it works. If someone has money and can negotiate terms that gives them more money, that gives them a better return out of the first money coming out. That is a standard finance. Counsel, to follow up with Judge Bybee's question, wouldn't then the better language in the operating agreement be preferred equity instead of interest and things of that nature? Well, I don't think so, because, as Judge Bybee said, these are common economic terms. OK, but what you mean is interest is really preferred equity, isn't it? Well, you're saying I get interest on my money of the equity before it comes out. OK, so so the equity accumulates a return, a mandatory return, unreduced from the investment. That's a standard phrase. It's also sometimes called a liquidation preference. If I'm liquidating an asset, I get a certain interest on my money that I put in as equity, but it all comes out of the profit. I mean, the key thing on a loan is that there's a mandatory repayment. It's unrelated to the profit for the venture. OK, now here. The Predicate Act was a supposed illegal usurious loan. But there was no loan in this case, let alone a usurious one. I mean, Civil Code Section 1912 of the California Civil Code defines a loan. It is I am giving money to someone else with repayment of that money. I mean, you got to think of what the context here is. The money is going to the LLC, it's not going to Mr. Malley. The equity investment is going to the LLC so it can pay its bills. There is no money being loaned to Mr. Malley because the LLC. Unless my colleagues have any questions, can we move on to the attorney's fees question? Yes, I think it probably is a bottom. So, yeah, if you want to introduce that and I have some questions for you. If I'm sorry, Judge Budeme, if I just one point, just the with respect to the Civil Rico case, of course, to the extent that that strategy is undertaken, it also has the potentiality of trouble, damages and attorney's fees, right? Yeah, I mean, it's a leverage play, I think, as to why they is why they pleaded. And I am correct. We are correct in understanding this was the only investor, the what I call minority investor, who who challenged in this fashion. Correct. Yes. The other two people who were in Mr. Malley's situation, which were the people who didn't have any more money to to put in, they signed what was required to get their distribution and they went on their way, like all of my clients want to do. Mr. Malley didn't sue them. I don't know why. They just they did. They just accepted reduced equity, correct? No, there's no obligation for them to borrow money. And they just accepted reduced equity. Isn't that correct? Well, they accepted that the people who put in more money got a got a preferred return before the their equity was paid. Exactly right. I'm sorry. OK, so and I won't go on. The rest of the Greco elements are nowhere in bed as well. But going to the attorney's fees issue and and and I, I, I cross appealed this because it's an interesting issue, I think. Now. Point is, the trial court made a finding that was not argued at all by Mr. Malley. Reading the arbitration saying that fees were only awarded in arbitration as a limitation on awarding of attorney's fees. Our argument on that is, is that it's a waiver. That you can't rely on a arbitration limitation to get a fee. It's a limitation on fees when you refuse to arbitrate. Did you did you did you seek to compel arbitration? Well, we did, except. Mr. Malley is quite a litigant. He said we could arbitrate. I think he was wrong. But our view was that we would be probably better off in federal court dealing with these Rico claims. It probably might be cheaper because we'd have to pay an arbitrator. But we told him to bring your claims in arbitration. He refused. He's he he didn't file a motion before the federal district court to compel arbitration, correct? We did not. We did not. But we think we have that option because he's waiving his right to arbitrate. We can accept his waiver. Sure, you accept his waiver. That means you also waive your attorney's fees under the operating agreement. I don't think so, Your Honor. That's that's our view, because I think the person you look at is a person who's trying to take advantage of the arbitration provision. Here, Mr. Malley refused to arbitrate, but now wants to take advantage of the limitation to arbitration fees. I think that's that that's the way. And I think why is it just to be clear, you're only asking for attorney's fees under the operating agreement, right? No, under no other basis of law. Yeah, it's 1717 claim. So under the operating agreement, there is no provision for attorney's fees. If you refuse to arbitrate, it's only if you arbitrate. So you want us to read into is another clause into the operating agreement? No, I don't think it's only if you arbitrate. It's the way the language, it's not the best language, I'll agree, is that the arbitration, you're awarded fees for the arbitration proceedings. It was not like if you only arbitrate, you get fees. It starts out. It's a very broad language. It's the ten point one of the agreement. It's any dispute. Counsel, it looks to me like you've just got a slam dunk. If you go to the if you go to the court and say, we need it, we need a motion. We're filing a motion to arbitrate, to compel arbitration because it was the exclusive dispute resolution. And so when you let that go and you don't file that, that looks like you've waived the possibility as well. And that goes then to Judge Bumate's question, which is all right. If the if the if the if ten point one is no longer in effect, it's not the exclusive dispute resolution mechanism. Then what other provision of law authorizes the shifting in attorney's fees? I think I think you just you ignore the arbitration and apply the the fees in ten point one. That that's our position. I'll I will admit this hasn't been decided, but the Cali case at one oh nine Calab four seven sixty nine specifically leaves that issue open because there the court said the question then would be whether the party's agreement providing for fees only for prevailing party to what was intended to be mandatory arbitration could be interpreted to cover subsequently agreed to court litigation. Of course, we need not decide that question here. I'll admit there's not a California case on point on that. But this case, the the Cali case versus Gray makes clear that that is not foreclosed. And we submit that. You've got to look at the party who's looking for the protection of the arbitration provision as to whether they waive that right, not the party who's trying to get the fees because they agreed with the with the person who decided to waive their right to arbitration. As we said in our brief. And I think this is somewhat consistent with with the U.S. Supreme Court in the recent Morgan versus Sundance case where a party started in court and they said, no, no, no, no, no. I want to go to arbitration. And the court said, no, you were too far along. You can't then say I want to go back to arbitration because you waive the right to the use of arbitration. Here, I submit once Mr. Malley decided to forego arbitration, he can't now say I don't want to pay fees on the loss of a dispute on the merits between members. That's that. Why not? Under the operating grading, it seems like he could. I just think he waives that right once he decides to forego arbitration. But textually, where does that exist? I just think you can read 10.1 that way, that that that let me push on it. How? How? I can't see how. Well, I think the broad language that the attorney's fees are awarded with regard to any dispute, it doesn't say just an arbitration of any dispute between the members. It says the prevailing party shall be entitled to reimbursement of attorney's fees, costs and expenses incurred in connection with the arbitration. But that's just the process. But with regard to the liability, it's any dispute, not just an arbitration dispute. That limitation is on the forum, not not the type of dispute. So I'm saying that as soon as he waived the forum. Then you just apply the language to say prevailing party of any dispute, which includes RICO claims under Chang and stiff. And that that's the way to read that, because because the the to allow a party and I'll be I'll be frank about this. This is why Mr. Duda, I mean, Mr. Malley did not raise this below, because, of course, he's now in state court on another action. OK, and he's going to want attorney's fees there, even though he's waived his right to arbitration again. I don't think it should be on the party who who gets sued in court and decides to defend itself in court and agrees to the plaintiff's forum to be forced to compel arbitration and then don't get the protection of the fee provision that just relies on the plaintiff actually following the contract and bringing it in the forum, especially what we told him to. Why, why? So there's always there's always the possibility that your clients thought or that you thought it was advantageous to have your clients in federal court rather than before an arbitrator. And if so, that's that's that's a waiver on your client's part. We don't have any way of judging that from here. I agree, but I don't think that's the way you look at the waiver on the party who brings the lawsuit. I think that's that's the way it is as to as to waiving that right, because obviously we accepted the forum in in in federal court. And the same thing he pled the attorney's fees. I mean, there's a good law in California, which we cited. You're a stop from asserting no payment of attorney's fees when you pleaded. If it's possible, they'll be awarded. If he if he wanted to waive his attorney's fees or have this protection, he should have said so in his pleading. I'm waiving my right to arbitration and the right to collect fees. I don't think it's our requirement to say we're waiving our right to collect fees when he's the one who selected the forum. So I think the law supports and should encourage the enforcement of a fee provision when it's the plaintiff who selects the forum and forgoes the arbitration at his risk. And in fact, the Mr. Malley requested an award of attorney's fees in each version of his complaint. Did he not? Yes, that's that's he's he's pursuing these attorney's fees in the operative second amended the operative second amended complaint. Once again, he affirmatively requested attorney's fees. Yes, if he he he wasn't telling us that he was entitled to fees under this contract that he had pled despite him deciding not to bring arbitration. And we want to hold him to that interpretation. Thank you, counsel. Mr. Duda, we'll give you one minute. Sorry, you're on mute. Can you hear me? Yes. OK, thank you, your honors. I'll be very quick with some very quick points. Number one is that I want to emphasize that the LLC held my clients money hostage in the sense that if he didn't agree not to if he didn't agree not to sue the LLC or any of its members or agents, then he wouldn't get any money. That's in section five point nine of the operating agreement. And number two, the other two victims of this loan scheme, it's true that they didn't sue. They accepted reduced distributions, you know, based on the loans that they made. So, you know, the language here, again, has to look you have to look at the course of conduct and you also have to look at the documentary evidence. Now, when it comes to attorney's fees. The American rule applies here. That is, unless there is some. OK, so what were you relying on when you asked for attorney's fees? Your honor, it's true that we did ask for attorney's fees. That was just a set process that we're looking in here. And I would mention that the the district court had the discretion and it was not limited to the particular legal theories advanced by the parties under Thompson v. Runnels from this court in in twenty in twenty thirteen. This was an unusual situation where. The defendants did not make any motion move to compel arbitration. Why didn't you agree to arbitration? You were obligated to do so under the agreement. We believe that there was legal reasons why. And we actually had exchange correspondence with the other side that why arbitration would not apply. I would note that the other side also threatened to file a rule 11 motion against my client for reasons that were entirely inappropriate. And that's why they did not file a rule 11, because they would have been subject to sanctions themselves for making factually false claims in their papers. Counsel, I'm still I'm still unclear on what what basis you thought you had for requesting attorney's fees. What what's the fee shifting, what would be the fee shifting provision? Your Honor, we we were we originally at this sought fees because we were it was our position at that time that arbitration was not applicable to this dispute. OK, so that that was that was our position at the time. OK. And so what what fee shifting provision would have allowed your client to recover attorney's fees? There would have been no did you have no basis for requesting attorney's fees in the complaint? Well, Your Honor, we looked at the arbitration clause and, you know, and we and we determined that if if it had if there was a possibility that attorneys' fees could apply. OK, so you so your basis was this was the same clause that you're  that your opponent now is asking for attorney's fees under. You thought 10.1 would authorize fees if you won. We thought 10.1 could authorize fees. However. In this particular case, both under there is case loss from the Ninth Circuit dealing with Chang Vichen, which says that if the if the arbitration clause is not allowed for for fees, then it won't allow it. And then this is a really important under the dispute suite case from the state Supreme Court. No fees can be awarded under Section 1717 unless there there's been a litigant. The entirety of the matter has been has been litigated overall. So, counsel, I haven't heard an answer to my question except for except for seven Section 10.1. So from everything that you've told me, the only basis you had for asking for attorney's fees was the arbitration provision in the operating agreement. Yes, that was that was that was the basis there. Again, under dispute suite, it's very important to know that that this is a this is California law applies here when it comes to 1717, the interpretation of it. And the state Supreme Court, which is binding, whose ruling is binding on this court, set forth that you have to look at who the winner is for all of the case. And what is undisputed is that most of the case, the case, that all the contract claims, contract based claims are now in the state superior court and they're in the process of being litigated. And there's no clear winner yet. And this case was quoted by a federal court in Allied Professionals versus Harmon 2017 WL 563 4870. So there's since there's been no final resolution of the contract claims, there can be no at this point. It's not there can be no determination of who the winner will be. And if you want to wrap up, you're about four minutes over. Yes, yes, I will. Thank you, Your Honors. Just to wrap up on the attorney's fees part of it, because there's no final resolution of Mr. Malli's claims, this court is in no position to determine who prevailed overall. And this is from Dispute Suite to Cal, Cal F nine sixty eight. Pence. OK, thank you, counsel. I think we have your argument. We appreciate it. This case is submitted.
judges: BYBEE, BUMATAY, Bennett